Mark H. Allenbaugh, Esq.
*Pro Hac Vice Pending*
Law Offices of Mark H. Allenbaugh
30432 Euclid Ave., Suite 101
Wickliffe, Ohio 44092
(800) 605-4993 (telephone)
(714) 464-4463 (fax)
mark@allenbaughlaw.com
Attorney for Wuxi City Runyuan Keji XiaoE Daikuan Co. Ltd.

Frank S. Hong, Esq.
California Bar No. 209699
LongAn Law Firm
575 Anton Blvd., Suite 300
Costa Mesa, CA 92626
(949)8781726
(949)8616988
frankhong@longanlaw.com
Attorney for Wuxi City Runyuan Keji XiaoE Daikuan Co. Ltd.



FILED
CLERK, U.S. DISTRICT COURT

MAY 23 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

EDCV13-0944 JFW (OPx)

| | |
|---|---|
| Wuxi City Runyuan Keji XiaoE DaiKuan Co., Ltd.<br><br>        Plaintiff,<br><br>vs.<br><br>Xuewei XU, an Individual; Sheng XU, and Individual; Hairong CAO, an Individual; Shubin ZHAO an Individual; REPET, Inc., a California corporation; REPET GROUP, Inc., a California corporation; AMERICA TBS, Inc., a California corporation; and Does 1 through 25 inclusive,<br><br>        Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR BREACH OF CONTRACT; FRAUD IN THE INDUCEMENT; FRAUD; CONVERSION; UNJUST ENRICHMENT; VICARIOUS LIABILITY; CIVIL RICO**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Wuxi City Runyuan Keji XiaoE DaiKuan Co. Ltd., ("Wuxi") by and through undersigned counsel, alleges as follows:

## INTRODUCTION

This case involves a long, substantial and complex conspiracy among the Defendants, both known and unknown, to defraud institutions and individuals of monies in the People's Republic of China, and launder the same through entities created within the United States. Reminiscent of the recent spate of mortgage fraud scandals to have plagued this country, Defendants knowingly utilized materially false and forged audit reports and other documents to inflate the collateral of business entities they controlled in China in order to obtain loans ostensibly for the capital requirements of those same enterprises. Rather than use these loans for their intended purposes, however, Defendants conspired with others known and unknown to transfer said funds out of the People's Republic of China and into the United States for their personal use.

The Defendants, and their co-conspirators known and unknown, were able to perpetuate their multi-year conspiracy through a classic *Ponzi* scheme by paying off older loans with newer loans. But as with most *Ponzi* schemes, inevitably, the Defendants' ability to find new victims in the People's Republic of China to pay off old victims (and thereby continue to conceal the true nature of their fraud) would become untenable. Plaintiff, unfortunately, was the last in a long line of victims left holding the bag. Shortly after Defendants defrauded Plaintiff of over USD $9 million through a series of fraudulent transactions, the Defendants fled the People's Republic of China to the United States. In doing so, Defendants willfully abandoned their businesses, employees and families leaving them to pick up the pieces of the economic destruction left by Defendants' conduct.

And it is here, within the Central District of California, that Defendants concealed and continue to conceal the proceeds of their fraud through various corporate entities that they created as early as March 15, 2009. The monies Defendants fraudulently obtained in China

COMPLAINT

were, by various means and since as early as March 16, 2009, funneled to accounts in the United States controlled by corporate entities they created, and which, by all appearances, seemed and do operate as legitimate enterprises otherwise. Through these corporate entities in a heretofore successful effort to hide the true origin of the proceeds, Defendants paid and reimbursed themselves and other co-conspirators for various personal expenses.

Finally, as detailed more fully below, one of the principal conspirators, Defendant Xuewei Xu, leaving no room for doubt, fully confessed to the allegations set forth herein in a letter to a government official shortly before he fled the People's Republic of China in a vain attempt to seek refuge in this jurisdiction.

## JURISDICTION AND VENUE

1. This Court has: (a) federal jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and the Racketeer Influenced and Corrupt Organizations act of 1970, 18 U.S.C. §§ 1961-1968 (hereinafter "RICO"); and (b) applicable principles of supplemental jurisdiction under 28 U.S.C. § 1367(a). The Court has subject matter jurisdiction over the related California state law claims pursuant to 28 U.S.C. §§ 1338 and 1367. This Court has subject-matter and diversity jurisdiction pursuant to 28 U.S.C. § 1332.

2. The amount in controversy between the parties exceeds $75,000.

3. The contracts at issue were to be performed and executed in Jiangyin City, Jiangsu Province, People's Republic of China.

4. Upon information and belief, Defendants Xuewei XU ("X. XU"), Sheng XU ("S. XU"), and Hairong CAO are domiciled in the County of Los Angeles, State of California, and their legal status to reside in the United States is unknown.

5. Upon information and belief, Defendant Shubin ZHAO also is domiciled in the County of Los Angeles, State of California, but is neither a permanent legal resident of the United States nor a citizen of the United States. See Exhibit A (email from Defendants' Counsel to the undersigned).

COMPLAINT

6.    Defendant REPET, Inc., is a corporation organized and operating under the laws of the State of California, with its principal place of business at 14207 Monte Vista Ave., Chino, County of San Bernardino, California 91710-5724; Defendant REPET GROUP, Inc., is a corporation organized and operating under the laws of the State of California, with its principal place of business at 14211 Monte Vista Ave., Chino, County of San Bernardino, California 91710-5724; Defendant AMERICA TBS, Inc., also is a corporation organized and operating under the laws of the State of California, with its principal place of business at 14211 Monte Vista Ave., Chino, County of San Bernardino, California 91710-5724.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (d); 18 U.S.C. § 1965; and 29 U.S.C. § 1132, because a substantial part of the events or omissions giving rise to the claims herein occurred in this venue, and a substantial part of the property that is subject to this action is situated in this venue. Moreover, the Resident Defendants reside in this judicial district, and in California.

## PARTIES

7.    At all times relevant to the instant Complaint, Plaintiff Wuxi City Runyuan Keji XiaoE Daikuan Co., Ltd. ("Wuxi") was and remains a Chinese business entity, organized and existing under the laws of the People's Republic of China, with its principal place of business located at 159 ChengJiang Zhong Road, Bldg D, Jiangyin City, Jiangsu Province, P. R. China. Wuxi is licensed by the Government of the People's Republic of China to lend small amounts of money to qualified borrowers for approved and legitimate use.

8.    At all times relevant to the instant Complaint, Defendants X. XU, S. XU, CAO, ZHAO and Does 1 through 25, upon information and belief of Plaintiff have maintained an ownership interest in, are employees and officers of, and do operate, REPET, REPET GROUP, and AMERICA TBS.  ZHAO is president of both REPET and AMERICA TBS.

COMPLAINT

9. At all times relevant to the instant Complaint, upon information and belief of Plaintiff, CAO resides and is domiciled at 2851 Lansdowne Pl., Rowland Heights, CA 91748-4970, and is a permanent legal resident or citizen of the United States.

10. At all times relevant to the instant Complaint, upon information and belief of Plaintiff, and according to a Deed of Trust filed with the County of Los Angeles, both X. XU and S. XU own a single family home located at 2851 Lansdowne Pl., Rowland Heights, CA 91748-4970, and also are domiciled therein, and are permanent legal residents or citizens of the United States.

11. Upon information and belief of Plaintiff, Defendant S. XU is the son of X. XU.

12. At all times relevant to the instant Complaint, upon information and belief of Plaintiff, ZHAO resides and is domiciled in a single family home located at 1812 Copper Valley Lane, Walnut, CA 91789-1379.

13. REPET, Inc., is a corporation organized under the laws of California, with entity number C3144693, and with its principal place of business located at 14207 Monte Vista Ave., Chino, Calif. 91710.

14. REPET GROUP, Inc., is a corporation organized under the laws of California, with entity number C3524508, and with its principal place of business located at 14211 Monte Vista Ave., Chino, Calif. 91710.

15. AMERICA TBS, Inc., is a corporation organized under the laws of California, with entity number C3308143, and with its principal place of business located at 14211 Monte Vista Ave., Chino, Calif. 91710.

16. DOES 1 through 25 are parties unknown at this time to Plaintiff.

## STATEMENT OF FACTS

17. On or about May 2, 2007, AMERICA TBS, Inc., filed its articles of incorporation with the Secretary of State of California and was assigned Entity Number C2917813, but later dissolved on November 4, 2009. On or about July 28, 2010, America TBS, Inc. re-filed its

COMPLAINT

articles of incorporation with the Secretary of State of California and was assigned Entity Number C3308143. ZHAO is listed as the agent for service of process for AMERICA TBS in all its iterations. Individual Defendants X. XU, S. XU, CAO and ZHAO all have ownership interest in AMERICA TBS and have so since its inception.

18.    On or about May 15, 2009, REPET filed its articles of incorporation with the Secretary of State of California. ZHAO is listed as the agent for service of process for REPET. Individual Defendants X. XU, S. XU, CAO and ZHAO all have ownership interest in REPET and have so since its inception.

19.    On or about December 4, 2012, REPET GROUP filed its articles of incorporation with the Secretary of State of California. A "Jason XU" is listed as the agent for service of process for REPET GROUP. Individual Defendants X. XU, S. XU, CAO and ZHAO all have ownership interest in REPET GROUP and have so since its inception.

20.    In or around 2009, X. XU and CAO travelled to the United States to meet with ZHAO for the purpose of investing in, and becoming managers or directors of, REPET, and, together with ZHAO and S. XU, have exercised management control over REPET since that time.

21.    REPET, REPET GROUP, and AMERICA TBS all are alter egos of each other, and together are engaged in the business of processing post-consumer "polyethylene terephthalate" or "polyester" plastic used as material for water bottles, as well as the production and export of "polyethylene terephthalate" flakes.

22.    Since at least May 15, 2009, Defendants conspired to defraud and in fact defrauded several financial institutions located in the People's Republic of China of monies through fraudulent loan applications, and diverted said proceeds to finance the operations of Defendants REPET, REPET GROUP, and AMERICA TBS, and for their personal use.

23.    No later than 2012, X. XU, S. XU, CAO and ZHAO specifically conspired to defraud Plaintiff of funds in order to divert the same to Defendants REPET, REPET GROUP, and AMERICA TBS for their capital requirements.

24.    On or about August 1-6, 2012, X. XU arranged for a commercial loan and, along with two other guarantors Yahong Cao and Jiangsu Disi FangZhi JiXie ZhiZao Co, Ltd., provided a personal guarantee on loan [2012] No. 118 for the amount of RMB ¥ Five Million (approximately equivalent to Eight Hundred Six Thousand, Four Hundred Fifty-Two United States Dollars (USD $806,452.00)). See Exhibit B. Plaintiff distributed the loan proceeds to account(s) over which XU had access and control.

25.    On or about August 17, 2012, X. XU arranged for a commercial loan and, along with two other guarantors, Yahong Cao and Jiangsu Disi FangZhi JiXie ZhiZao Co. Ltd., provided a personal guarantee on loan [2012] No. 119 for the amount of RMB ¥ Five Million (approximately equivalent to Eight Hundred Six Thousand, Four Hundred Fifty-Two United States Dollars (USD $806,452.00)). See id. Plaintiff distributed the loan proceeds to account(s) over which XU had access and control.

26.    On or about August 28, 2012, CAO arranged for a commercial loan and, along with two other guarantors, Yahong Cao and Jiangsu Xinrong HuaXian Co. Ltd., provided a personal guarantee on loan [2012] No. 135 for the amount of RMB ¥ Five Million (approximately equivalent to Eight Hundred Six Thousand, Four Hundred Fifty-Two United States Dollars (USD $806,452.00)). See id. Plaintiff distributed the loan proceeds to an account over which CAO had access and control.

27.    On or about August 28, 2012, CAO arranged for a commercial loan and, along with two other guarantors, Yahong Cao and Jiangsu XinRong HuaXian Co. Ltd., provided a personal guarantee on loan [2012] No. 136 for the amount of RMB ¥ Five Million (approximately equivalent to Eight Hundred Six Thousand, Four Hundred Fifty-Two United States Dollars (USD $806,452.00)). See id. Plaintiff distributed the loan proceeds to an account over which CAO had access and control.

28.    On or about August 28, 2012, CAO arranged for a commercial loan and, along with two other guarantors, Yahong Cao and Jiangsu XinRong HuaXian Co. Ltd., provided a personal guarantee on loan [2012] No. 137 for the amount of RMB ¥ Five Million

COMPLAINT

(approximately equivalent to Eight Hundred Six Thousand, Four Hundred Fifty-Two United States Dollars (USD $806,452.00)). See id. Plaintiff distributed the loan proceeds to an account over which CAO had access and control.

29.     On or about September 10, 2012, CAO arranged for a commercial loan and, along with two other guarantors, Yahong Cao and Jiangsu XinRong HuaXian Co. Ltd., provided a personal guarantee on loan [2012] No. 154 for the amount of RMB ¥ Five Million (approximately equivalent to Eight Hundred Six Thousand, Four Hundred Fifty-Two United States Dollars (USD $806,452.00)). See id. Plaintiff distributed the loan proceeds to an account over which CAO had access and control.

30.     On or about September 10, 2012, X. XU arranged for a commercial loan and, along with two other guarantors, Yahong Cao and Jiangsu ShengChang KeJi Co. Ltd., provided a personal guarantee on loan [2012] No. 155 for the amount of RMB ¥ Five Million (approximately equivalent to Eight Hundred Six Thousand, Four Hundred Fifty-Two United States Dollars (USD $806,452.00)). See id. Plaintiff distributed the loan proceeds to an account over which XU had access and control.

31.     On or about September 10, 2012, X. XU arranged for a commercial loan and, along with two other guarantors, Yahong Cao and Jiangsu ShengChang KeJi Co. Ltd., provided a personal guarantee on loan [2012] No. 156 for the amount of RMB ¥ Five Million (approximately equivalent to Eight Hundred Six Thousand, Four Hundred Fifty-Two United States Dollars (USD $806,452.00)). See id. Plaintiff distributed the loan proceeds to an account over which XU had access and control.

32.     On or about October 19, 2012, CAO arranged for a commercial loan and, along with two other guarantors, Zhonghua Zhu and Jiangsu Tianyu NieWang Co. Ltd., provided a personal guarantee on loan [2012] No. 185 for the amount of RMB ¥ Five Million (approximately equivalent to Eight Hundred Six Thousand, Four Hundred Fifty-Two United States Dollars (USD $806,452.00)). See id. Plaintiff distributed the loan proceeds to an account over which CAO had access and control.

COMPLAINT

33.    On or about October 19, 2012, CAO arranged for a commercial loan and, along with two other guarantors, Zhonghua Zhu and Jiangsu Tianyu NieWang Co. Ltd., provided a personal guarantee on loan [2012] No. 186 for the amount of RMB ¥ Five Million (approximately equivalent to Eight Hundred Six Thousand, Four Hundred Fifty-Two United States Dollars (USD $806,452.00)). See id. Plaintiff distributed the loan proceeds to an account over which CAO had access and control. For ease of reference, hereinafter the above series of loans will be denominated variously as "the loans," "loan applications" or "loan guarantees".

34.    On or about November 21, 2012, X. XU fled the People's Republic of China to the United States of America, and, upon information and belief, continues to reside and is domiciled within the Central District of California.

35.    At a date unknown, CAO fled the People's Republic of China to the United States of America, and, upon information and belief, continues to reside and is domiciled within the Central District of California.

36.    None of the proceeds from the above-referenced loans were utilized for their intended purposes, namely, as working capital for Jiangsu XinRong HuaXian Co., Ltd., which was owned by CAO; and Jiangsu ShengChang KeJi Co., Ltd., which was owned by XU, among several other companies.

37.    Defendants X. XU, S. XU, and CAO, in conspiracy with ZHAO and others unknown at this time to Plaintiff, diverted the proceeds of the above-referenced loans out of the People's Republic of China, and upon information and belief, to bank accounts controlled by REPET, REPET GROUP, and AMERICA TBS, as well as other accounts for Defendants' personal use.

38.    On November 23, 2012, Defendant X. XU, in fact confessed to the various frauds set forth in the instant Complaint, writing that the frauds began in 2008 when five companies he controlled through straw-men suffered financial difficulties. See Exhibit C (Defendants' translation of letter of X. XU sent to Jizhong CHEN, Gen. Mgr., Village Comm., Zongayn Village, Zhouzhuang Town, Jiangyin City). Defendant X. XU admitted that "I was constantly

borrowing from one source to pay for another debt." *Id.* Defendant X. XU, in a self-serving effort to apologize, recognized that he "ha[s] hurt too many people and brought trouble to the government and leaders," nevertheless continued his outright lies when he claimed that he "ha[s] nothing now." *Id.*

39.    Since at least May 15, 2009, in a series of loan transactions detailed below, Defendant X. XU, in conspiracy with all other Defendants, engaged in a pattern of fraud and deceit through submission of false and forged documents in support of said loans, the proceeds of which Defendants never intended to repay, and which were used for purposes other than for their intended purposes.

40.    On January 14, 2013, government officials in the People's Republic of China issued arrest warrants for Defendants X. XU and CAO based upon their conduct as set forth in the instant Complaint.

41.    On April 14, 2013, government officials in the People's Republic of China revoked the passports of Defendants X. XU and CAO based upon their conduct as set forth in the instant Complaint.

42.    Interpol has issued wanted notices for Defendants X. XU and CAO. See Exhibit D.

## FIRST CLAIM
### (BREACH OF CONTRACT)

43.    Plaintiff repeats and realleges paragraphs 1 through 42 above as though fully set forth in this claim.

44.    The loans Defendants fraudulently induced Plaintiff to fund were intended by Plaintiff solely to provide working capital expressly and exclusively for Jiangsu XinRong HuaXian Co., Ltd., and Jiangsu ShengChang KeJi Co., Ltd., among other companies as identified on the loan contracts.

COMPLAINT

45. Defendants knew that any monies lent by Plaintiff were required to be used solely as working capital for these businesses.

46. Shortly after the loans were funded, Defendants misallocated and redirected said monies for their own personal benefit and otherwise in an unauthorized manner in direct and express contravention of the purpose of the loans, which were to provide working capital expressly and exclusively for Jiangsu XinRong HuaXian Co., Ltd., and Jiangsu ShengChang KeJi Co., Ltd. among several other companies.

47. Defendants thereby knowingly, willfully and intentionally breached the provisions of the loan by misallocating, re-directing and otherwise mis-utilizing the proceeds of the loan for non-business purposes.

48. Further, Defendant X. XU expressly informed others shortly after the loan proceeds issued that he intended to abandon Jiangsu ShengChang KeJi Co., Ltd., abscond with the proceeds and otherwise mis-utilize the same. See Exhibit C.

49. Plaintiff has suffered significant monetary damages as a direct and proximate result of Defendants' conduct set forth above.

## SECOND CLAIM
### (FRAUD IN THE INDUCMENT)

50. Plaintiff repeats and realleges paragraphs 1 through 49 above as though fully set forth in this claim.

51. Defendants fraudulently induced Plaintiff to lend Defendants monies by, *inter alia*, knowingly, willfully, and intentionally falsifying material provisions of loan documents and supporting documents with the specific intent to defraud Plaintiff.

52. Specifically, no later than the time of the execution of the loan guarantees, Defendants intentionally misled Plaintiff when Defendants indicated the loan proceeds in fact would be used as working capital expressly and exclusively for Jiangsu XinRong HuaXian Co., Ltd., and Jiangyin City ShengChang KeJi Co., Ltd., among several other companies.

COMPLAINT

53. In furtherance of the fraud, Defendants specifically induced Plaintiff into believing that Defendants had submitted true and correct audit reports and financial information, and would otherwise abide by each and every provision of the loan applications, including, but not limited to, the provision set forth at Article 7 ("Resolution of dispute"), see Doc. No. 17-4, #165, which Defendants knew that they would abscond with the proceeds outside the People's Republic of China at the time they entered into these loan applications.

54. Plaintiff reasonably relied on Defendants' forged and false documentations and other misrepresentations when deciding to fund the above-referenced loans.

55. At the time Defendants sought the loans, Defendants submitted false and fraudulent supporting documentation, and otherwise had no intention of utilizing the loan proceeds as working capital for their respective companies or for their intended purposes.

56. Plaintiff would not have lent any monies to Defendants if it had known that Defendants had submitted false, fraudulent and forged support documentation, and would otherwise abscond with the proceeds, abandon the businesses, and did not ever intend to use the monies lent as working capital for Defendants' business, but would be diverting the same outside of the People's Republic of China for operating capital in Defendant entities REPET, REPET GROUP, AMERICA TBS and for their personal use otherwise.

57. Plaintiff has suffered significant monetary damages as a direct and proximate result of Defendants conduct as set forth above.

## THIRD CLAIM

## (FRAUD)

58. Plaintiff repeats and realleges paragraphs 1 through 57 above as though fully set forth in this claim.

59. Defendants knew their representations on the loan applications to Plaintiff to be false and otherwise willfully and knowingly made false representations to Plaintiff at the time

COMPLAINT

Defendants negotiated with Plaintiff for the loans including submitting false and forged audit reports and financial statements.

60.    Plaintiff reasonably relied on Defendants' forged and false documentations and other misrepresentations when deciding to fund the above-referenced loans.

61.    Defendants have absconded with the loan proceeds and otherwise mis-utilized those proceeds.

62.    Defendants have no intention to re-pay the proceeds of the loans to Plaintiff.

63.    Plaintiff has suffered significant monetary damages as a direct and proximate result of Defendants' conduct set forth above.

## FOURTH CLAIM

### (CONVERSION)

64.    Plaintiff repeats and realleges paragraphs 1 through 57 above as though fully set forth in this claim.

65.    Defendants knowingly and intentionally have permanently deprived Plaintiff of the monies Plaintiff used to fund the above-referenced loans.

66.    Plaintiff at no time consented to Defendants misallocation of the loan proceeds.

67.    Defendants have absconded with the loan proceeds and otherwise mis-utilized those proceeds by investing those same proceeds in the entity Defendants REPET, REPET GROUP and AMERICA TBS, as well as in real estate among other things.

68.    Defendants have no intention to re-pay the proceeds of the loans to Plaintiff.

69.    Plaintiff has suffered significant monetary damages as a direct and proximate result of Defendants' conduct set forth above.

## FIFTH CLAIM

### (UNJUST ENRICHMENT)

COMPLAINT

70. Plaintiff repeats and realleges paragraphs 1 through 69 above as though fully set forth in this claim.

71. Defendants knowingly and intentionally have permanently deprived Plaintiff of the monies Plaintiff used to fund the above-referenced loans.

72. Plaintiff at no time consented to Defendants misallocation of the loan proceeds.

73. Defendants have absconded with the loan proceeds and otherwise mis-utilized those proceeds by investing those same proceeds in the entity Defendants REPET, REPET GROUP and AMERICA TBS, as well as in real estate among other things.

74. Defendants have no intention to re-pay the proceeds of the loans to Plaintiff.

75. Defendants have continued to retain the proceeds of said loans, and as a result, have been unjustly enriched.

76. Plaintiff has suffered significant monetary damages as a direct and proximate result of Defendants' conduct set forth above.

## SIXTH CLAIM

### (FRAUDULENT TRANSFER as to Defendant Sheng XU)

77. Plaintiff repeats and realleges paragraphs 1 through 76 above as though fully set forth in this claim.

78. On or about April 25, 2012, Defendants Xuewei XU and Sheng XU purchased real estate located at 2851 Landsdowne Place, Rowland Heights, Calif. 91748-4970 in the amount of $1,250,000 with all cash payment.

79. Defendants used proceeds of their fraud for improving and maintaining the Landsdowne property.

80. On or about December 7, 2012, Defendants transferred said real estate to Defendant Sheng XU, and did the same as an inter-family transfer without receiving sufficient consideration for said transfer.

COMPLAINT

81.    Defendant Xuewei XU made the transfer with the intent to hide, hinder, delay or defraud Plaintiff from recovering the loan proceeds Defendants wrongfully obtained from Plaintiff.

82.    Plaintiff has suffered significant monetary damages as a direct and proximate result of Defendants' conduct set forth above.

## SEVENTH CLAIM

### (CIVIL RICO)

83.    Plaintiff repeats and realleges paragraphs 1 through 82 above as though fully set forth in this claim.

84.    At all relevant times, all Defendants were an enterprise as defined in 18 U.S.C. § 1961 and were engaged in, and its activities affected, interstate and foreign commerce. Such enterprise furnished a vehicle for the commission of a pattern of racketeering activity.

85.    The Defendants, and other wrongdoers conspired, confederated, and agreed with each other to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

86.    At all relevant times, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962(c).

87.    At all relevant times, the Defendants within the enterprise maintained a relationship with each and every other Defendant for the common purpose of carrying out racketeering activity. Plaintiffs are informed and believe that this enterprise existed and was ongoing for a substantial length of time to carry out these purposes, and began on or before May 2, 2007, which was the time Defendants initially incorporated AMERICA TBS in the State of California. Plaintiffs are also informed and believe that various conspirators functioned within the enterprise as a continuing unit and that the enterprise existed separate and apart from the pattern of racketeering in which it engaged in. Each conspirator engaged in extensive participation in the enterprise affairs.

COMPLAINT

88.     On March 16, 2009, shortly before Defendants created REPET, Defendant X. XU, in his capacity as a director of Jiangyin City ShengChang KeJi Co., Ltd., provided false financial statements and forged documents to the Industrial and Commercial Bank of China (ICBC) Jiangyin Branch (a non-party to the instant litigation) to obtain a commercial loan of RMB ¥7,000,000, and again provided false financial statements to ICBC on September 16, 2009, for a commercial loan of RMB ¥10,900,000. ICBC funded these loans, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

89.     On January 12, 2010, Defendant CAO, in his capacity as a director of Jiangsu Xinrong HuaXian Co., Ltd., provided false financial statements and forged audit reports, and otherwise misrepresented the need for the company's liquidity when he applied for, and obtained a RMB ¥2,000,000 from ICBC (Jiangyin Branch). ICBC funded the loan, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

90.     On January 25, 2010, Defendant CAO, in his capacity as a director of Jiangsu Xinrong HuaXian Co., Ltd., provided false financial statements and forged audit reports, and otherwise misrepresented the need for the company's liquidity when he applied for, and obtained a RMB ¥1,900,000 from Jiangyin ICBC. ICBC funded the loan, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

91.     On March 8, 2010, Defendant CAO, in his capacity as a director of Jiangsu Xinrong HuaXian Co., Ltd., provided false financial statements and forged audit reports, and otherwise misrepresented the need for the company's liquidity when he applied for, and obtained a RMB ¥5,000,000 from ICBC (Jiangyin Branch). ICBC funded the loan, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

COMPLAINT

92.    On November 23, 2010, Defendant CAO, in his capacity as a director of Jiangsu Xinrong HuaXian Co., Ltd., provided false financial statements and forged audit reports, and otherwise misrepresented the need for the company's liquidity when he applied for, and obtained a RMB ¥5,600,000 from ICBC (Jiangyin Branch). ICBC funded the loan, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

93.    On January 12, 2011, Defendant CAO, in his capacity as a director of Jiangsu Xinrong HuaXian Co., Ltd., provided false financial statements and forged audit reports, and otherwise misrepresented the need for the company's liquidity when he applied for, and obtained a RMB ¥4,000,000 from ICBC (Jiangyin Branch). ICBC funded the loan, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

94.    On March 11, 2011, Defendant CAO, in his capacity as a director of Jiangsu Xinrong HuaXian Co., Ltd., provided false financial statements and forged audit reports, and otherwise misrepresented the need for the company's liquidity when he applied for, and obtained a RMB ¥3,000,000 from ICBC (Jiangyin Branch). ICBC funded the loan, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

95.    On October 18, 2011, Defendant CAO, in his capacity as a director of Changrong Feijiu Wuzi Huishou Co., Ltd., provided Plaintiff with false financial statements and forged audit reports in order to obtain a RMB ¥10,000,000 loan. Plaintiff funded the loan, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

96.    Specifically, on August, 11, 2011, Defendant X. Xu through Jiangyin City ShengChang KeJi Co., Ltd. and Jiangyin City XiangDa HuaXian Co. Ltd., two companies under his control, submitted to Plaintiff false financial statements and forged audit reports in order to obtain two RMB ¥5,000,000 loans for both companies. Plaintiff funded the two loans totaling

COMPLAINT

RMB10,000,000, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

97.    On October 20, 2011, Defendants produced at least three sets of false sales contracts and invoices between the Jiangyin City Xiangda HuaXian Co., Ltd., which was controlled by Defendant X. XU, and Defendant REPET. Ostensibly, Xiangda Huaxian Co., Ltd., was paying for product purchased from Defendant REPET. However, no such product ever existed. These false and fraudulent documents were used as cover to facilitate a series of wire transactions totaling USD $564,455 from Xiangda HuaXian Co., Ltd., to Defendant REPET via victim financial institutions the China Industrial and Commercial Bank and others. Specifically, on October 20, 2011, USD $257,672 was wired to Defendant REPET as a result of this scheme; on November 18, 2011, USD $176,580 was wired to Defendant REPET via the Agricultural Bank of China; on February 21, 2012, USD $130,203 was wired to Defendant REPET via the China Industrial and Commercial Bank.

98.    On September 28, 2012, Defendant X. XU, in his capacity as a director of Jiangyin City Xiangda HuaXian Co., Ltd., provided false financial statements and forged audit reports, and otherwise misrepresented the need for the company's liquidity when he applied for, and obtained, a RMB ¥5,000,000 loan from Jiangyin Rural Commercial Bank ("JRCB"). JRCB funded the loan, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

99.    On October 22, 2012, Defendant X. XU, through companies under his control, provided false financial statements and forged audit reports, and otherwise misrepresented the need for the company's liquidity when he applied for, and obtained, a RMB ¥10,000,000 loan from Jiangyin City Tianyu NieWang Co., Ltd. ("JTNW"). JTNW funded the loan, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

100.    On November 19, 2012, Defendant CAO , through companies under his control provided false financial statements and forged audit reports, and otherwise misrepresented the

need for the company's liquidity when he applied for, and obtained, a RMB ¥10,000,000 loan from JTNW. JTNW funded the loan, but would not have had true and correct financial statements and audit reports been submitted. Furthermore, the loan proceeds were not used for their intended purposes.

101.    In July 2012, Defendant X. XU, in his capacity as a director of Jiangyin City XiangDa HuaXian Co., Ltd., XiangDa, directed and did make a series of false purchase contracts, invoices and otherwise fabricated transactions in order to deceive Pudong Development Bank (Jiangyin Branch) ("PDB") to open a line of credit for RMB ¥10,000,000, which Defendant X. XU subsequently drew down completely without repaying the same to PDB.

102.    From August 2010 through the present, Defendants, in conjunction with other conspirators, utilized a complex scheme to divert the proceeds of the loans reference above to overseas accounts, including accounts controlled in the United States by Defendants REPET, Inc.; REPET GROUP, Inc.; and AMERICA TBS. Specifically, during the period from August 9, 2010 to April 28, 2012, the scheme involved the use of multiple bank cards owned by Chinese nationals Jingxia GU, Huixiang XU, Xuewei XU, Peng ZHANG, Xinjun HU, Junhong GU, Feifan CHEN to transfer funds at least 15 times totaling at least RMB ¥28,442,000 to accounts controlled by Yisong CHEN (bank card number: 6228480120635525013, 6228480120050905010), and Xiaoting LI (bank card number: 6228480604474996211), who are known to engage in illegal cross-border transfers of monies from within the mainland of People's Republic of China to Hong Kong and elsewhere. Defendants would deposit monies procured by their loan fraud into accounts associated with the bank card numbers above. CHEN and LI subsequently would either transfer funds by wire into accounts outside of China, or withdraw large sums of cash and send the same via courier across the border into Hong Kong, which would subsequently be transferred to U.S. bank accounts controlled by Defendants. CHEN and LI received fees for facilitating such transactions.

103.    At all relevant times, the Defendants and the other conspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's

COMPLAINT

affairs though a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c).

104. Specifically, at all relevant times, Defendants, and other Conspiring Defendants engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above against Plaintiff and many other financial institutions in the marketplace, all with the express purpose of defrauding Plaintiff and other victims. The acts set forth above constitute a violation of one or more of the following statutes: 18 U.S.C. § 1343(wire fraud) and 18 U.S.C. § 1957 (money laundering). The Conspiring Defendants and other conspirators each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

105. The Defendants and the other conspirators committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

106. The acts of racketeering activity referred to in the previous paragraph constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1951(5). The acts alleged were related to each other by virtue of common participants, common victims and a common result of fraud and enriching the conspirators at Plaintiff's expense while concealing the conspirator's fraudulent activities. The fraudulent scheme continues and would have remained unknown but for Plaintiff's realizing it had lent monies as a result of various fraudulent loans Defendants induced Plaintiff to fund.

107. As a result of the Defendants and the other conspirators' violation of 18 U.S.C. §1962(c), Plaintiff lost all of the money it had loaned to Defendants as a result of Defendants' fraudulent scheme.

108. As a result of its misconduct, Defendants are liable to Plaintiff for its losses in an amount to be determined at trial.

109. Pursuant to RICO, 18 U.S.C. § 1964(c), Plaintiffs is entitled to recover threefold their damages plus costs and attorneys' fees from the Defendants.

COMPLAINT

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for:

1.      Damages in an amount of no less than USD $9,032,262.00 or otherwise to be proven at trial including interest and punitive damages;

2.      Costs of suit incurred herein;

3.      Reasonable attorneys' fees; and

4.      Such other and further relief as the Court may deem just and proper.

Dated: May 22, 2013

Respectfully submitted,

MARK H. ALLENBAUGH, ESQ.
Law Offices of Mark H. Allenbaugh
Attorney for Plaintiff
*Pro Hac Vice Pending*

FRANK S. HONG, ESQ.
LongAn Law Firm
Attorney for Plaintiff

COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby request a trial by jury.

DATED this 22nd Day of May, 2013.

MARK H. ALLENBAUGH, ESQ.
Law Offices of Mark H. Allenbaugh
Attorney for Plaintiff
*Pro Hac Vice*

FRANK S. HONG, ESQ.
LongAn Law Firm
Attorney for Plaintiff

COMPLAINT

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at _Jiangyin City, P.R.C._____ on

May 22, 2013
(location) (date)

_____
Plaintiff's Original Signature

COMPLAINT

# EXHIBIT A

## Mark Allenbaugh

| | |
|---|---|
| From: | Jonathan Weiss <jweiss@hwangweiss.com> |
| Sent: | Thursday, April 18, 2013 6:08 PM |
| To: | Mark Allenbaugh |
| Cc: | Frank; Frank Hong |
| Subject: | Re: Shubin Zhao |
| Attachments: | Zhao's B2.jpg |

Please find Mr. Zhao's B2 attached.

On Thu, Apr 18, 2013 at 10:06 AM, Mark Allenbaugh <mark@allenbaughlaw.com> wrote:

Jonathan:

Thank for the quick reply. A copy of the B-2 when you have a chance will be appreciated. We will concede he is NOT a U.S. citizen.

Best regards,

-Mark

**From:** Jonathan Weiss [mailto:jweiss@hwangweiss.com]
**Sent:** Thursday, April 18, 2013 12:58 PM
**To:** Mark Allenbaugh
**Cc:** Frank; Frank Hong
**Subject:** Re: Shubin Zhao

Mark,

Mr. Zhao is neither a U.S. citizen nor a green-card holder. I can get you a copy of his B2 visa (all I have is a black and white copy). The B2 expired in late 2012, and it is impossible to go from B2 to citizen in such a short period of time.

I am out of the office so probably will not be able to get you the copy for several hours.

On Thu, Apr 18, 2013 at 9:13 AM, Mark Allenbaugh <mark@allenbaughlaw.com> wrote:

1

Jonathan:

Are you sure Shubin Zhao is NOT a U.S. Citizen? I just re-reviewed the passport/green card documents you provided and noticed there is no green card for Mr. Zhao. We have reason to believe he in fact is a U.S. citizen, but will stipulate he is NOT if, like the other individual defendants, you can produce a copy of his green card.

Thanks!

-Mark

P.S. Just a heads-up that the motion to strike will be filed shortly.

Mark H. Allenbaugh
Law Offices of Mark H. Allenbaugh
30432 Euclid Ave., Suite 101
Wickliffe, Ohio 44092

Tel: (800) 605-4993 | Fax: (714) 464-4463 | Mob: (714) 654-9474
Email: mark@allenbaughlaw.com | SKYPE: mark.allenbaugh

Website: www.allenbaughlaw.com

Greater Los Angeles | Cleveland | Washington DC | Beijing

*Licensed in the District of Columbia, Maryland, New York (pending) and Virginia.*

*Admitted to the U.S. District Court for the Northern District of Ohio,*

*several federal district and appellate courts including the U.S. Supreme Court.*

This transmission is intended for the sole use of the individual and/or entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or his, her or its designated agent is strictly prohibited. If your receipt of this transmission is in error, please notify this firm immediately by reply to this transmission and immediately and permanently delete this message.

--
Sincerely,

Jonathan D. Weiss
Attorney at Law

Law Offices of Hwang & Weiss, P.C.
625 Fair Oaks Ave. Ste. 377

South Pasadena, CA 91030

Tel: 626-441-2383

Fax: 626-441-2293

Email: jweiss@hwangweiss.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

--
Sincerely,

Jonathan D. Weiss
Attorney at Law

Law Offices of Hwang & Weiss, P.C.
625 Fair Oaks Ave. Ste. 377
South Pasadena, CA 91030
Tel: 626-441-2383
Fax: 626-441-2293
Email: jweiss@hwangweiss.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

# EXHIBIT B

江苏科贷借款借据

2012年 8月 16日

| 单 位: | 无锡市惠山科技及小额贷款有限公司 | | | |
|---|---|---|---|---|
| 合同编号 | 锡惠科贷借字2012年118号 | 借据号 | 32228150 0002971 | |
| 借款人 | 江阴市丰昌科技有限公司 | 证件号码 | 3202 91000 68583 |
| 证件类型 | 营业执照 | 到期日期 | 20120816 |
| 借款日期 | 20120816 | 还款方式 | 按批还息到期还本 |
| 月利率 | 12.5‰ | | |
| 借款金额 | ¥:1,000,000 | 大写:壹佰万元整 | 借款人签章: |
| 借款事由 | 流动资金及发展 | | 陈建昌 |
| 放款银行 | 国家开发银行 | | |
| 放款账号 | 3210156 00214779 00000 | | |
| 凭证号 | | | |

| 财务复核: | 出纳: | 复核员: | 业务员: |

徐雪伟

K00111

合同编号：锡润科贷借字[2012]第 118号

# 借 款 合 同

借款人： <u>江阴市升昌科技有限公司</u>

贷款人： <u>无锡市润元科技小额贷款有限公司</u>



无锡市润元科技小额贷款有限公司

2012年 8月 16日

K00112

# 借 款 合 同

锡润科贷借字[2012]第 118 号

借款人（全称）：江阴市升昌科技有限公司

贷款人（全称）：无锡市润元科技小额贷款有限公司

根据国家有关法律、法规和规章，经借、贷双方当事人充分协商一致，特订立本合同，共同遵守。

第一条 贷款人同意向借款人发放以下内容贷款

一、借款种类： 流动资金及其他

二、借款用途： 购买原材料等

三、借款金额（大写）：人民币 伍佰万元整

四、借款与还款期限：

（一）借款与还款期限见下表。表中栏目不够填写而增填的附表，作为本合同组成部分。

| 借款 | | | | 还款 | | | |
|---|---|---|---|---|---|---|---|
| 年 | 月 | 日 | 金额 | 年 | 月 | 日 | 金额 |
| 2012 | 8 | 16 | ¥5000,000 | 2013 | 8 | 16 | ¥5000,000 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

（二）本合同记载的借款金额、借款日期、还款日期如与借款凭证记载不相一致时，以借款凭证记载为准。借款凭证为本合同的组成部分，与本合同具有同等法律效力。

（三）借款人提前还款，应当向贷款人提出书面申请，并征得贷款人同意，提前还款利率不变。

五、利息计付：

2

（一）　本合同项下借款月利率为＿0.5‰。短期贷款按本合同利率执行；中长期贷款利率按中国人民银行规定一年一定；第一年按本合同利率执行，后如中国人民银行人民币贷款基准利率调整，自基准利率调整后的次年 1 月 1 日起，由贷款人按当时相应档次的浮动基准贷款利率上浮＿／＿％确定下一年利率并通知借款人。

（二）　本合同项下借款按＿月＿（季/月）结息，结息日为每＿月＿（月/季末月）的第_20_日。

第二条　除非满足以下先决条件，否则贷款人有权拒绝提供本合同项下贷款：

一、借款人在贷款人委托结算的金融机构＿＿＿／＿＿＿处开立＿／＿账户，并通过该账户办理与本合同项下贷款有关的往来结算。

二、借款人与贷款人签订《委托扣款还贷协议》同意贷款人委托结算的金融机构＿＿＿／＿＿＿，按本合同约定的事项，到期在借款人＿＿／＿＿账户内直接扣划贷款本金和利息（含罚息）。

三、若本合同项下贷款没有担保的，则借款人已根据贷款人要求办妥登记（住房按揭贷款办妥预告登记）、移交质物（票据质押已完备背书）、保险等法律手续，且该担保、保险持续有效。

第三条　贷款人权利和义务

一、贷款人有权了解借款人的生产经营、财务活动、物资库存和贷款的使用、对外担保、未决诉讼等或有事项，要求借款人按期提供财务报表等文件、资料和信息。

二、按照本合同规定收回或提前收回贷款本金、利息、罚息、逾期利息、复利和其他借款人应付费用时，贷款人均可直接从借款人任何帐户中划收。

三、借款人如未履行本合同项下第四条三至十二项所列情形之一，有可能影响贷款人债权实现，又不能很好地落实清偿责任或不能及时提供贷款人认可的有效担保措施时，贷款人有权决定提前收回贷款，并提前行使担保权。

四、在借款人履行本合同规定义务地前提下，按期足额向借款人发放贷款，

3

Kou113

贷款在所有主从合同生效且抵押权、质权依法设立的合同期限内发放。

第四条　借款人权利和义务

一、有权按照本合同约定取得和使用贷款。

二、按期归还贷款本金。如遇特殊情况，借款人不能在借款期限归还借款而需展期的，应在借款期限届满__30__日前向贷款人提出书面展期申请，经贷款人同意后，签订借款展期协议。

三、借款人应在结息日向贷款人支付应付利息。

四、按本合同规定用途使用贷款，不挤占、挪用贷款。

五、按月向贷款人提供真实、完整的财务报表及其他相关资料、信息，并积极配合贷款人对其生产经营、财务活动及本合同项下贷款使用情况的检查。

六、借款人在本合同项下贷款本息未全部还清之前如采取承包、租赁、股份制改造、联营、合并、分立、合资、资产转让、申请停业整顿、申请解散、申请破产、法定代表人变更以及其他足以引起本合同之债权债务关系变化或影响贷款人债权实现的行动，应当提前书面通知贷款人，并由贷款人参加各种重要会议，同时落实债务清偿责任或提前清偿债务，否则不得采取上述行动。

七、借款人发生除上款所述事件之外对其正常经营构成危险或对其履行本合同项下还款义务产生重大不利影响的任何其他事件，如停产、歇业、被注销登记、被吊销营业执照、法定代表人或主要负责人从事违法活动、涉及重大诉讼活动、生产经营出现严重困难、财务状况恶化等，均应立即书面通知贷款人，并落实贷款人认可的债权保全措施。

八、在本合同有效期间内，借款人为他人债务提供保证或以其主要财产向第三人抵押、质押，可能影响其偿还本合同项下借款能力的，应当提前书面通知贷款人并征得贷款人书面同意。

4

九、借款人及其投资者不得有抽逃资金、转移资产或擅自转让股份等行为，以逃避对贷款人的债务。

十、借款期间借款人发生名称、法定代表人、住所、经营范围变更等事项，应当提前书面通知贷款人。

十一、本合同项下借款的担保人出现停产、歇业、注销登记、被吊销营业执照、破产以及经营亏损等情形，部分或全部丧失与本借款相应的担保能力，或者作为本合同项下借款担保的抵押物、质物、质押权利价值减少，借款人应当及时提供贷款人认可的其他的担保措施。

十二、借款人应当承担与本合同及本合同项下担保有关的律师服务、保险、运输、评估、登记、保管、鉴定、公证等费用。

第五条　违约责任

一、借款人违约：

（一）逾期利息：借款人不按期归还贷款本金又未获准展期，从逾期之日起按合同约定利率加付＿50＿％的利息。

（二）挤占挪用罚息：借款人不按合同规定用途使用贷款，按挤占挪用处理，此期间对挤占挪用部分按合同约定利率加付＿100＿％的利息。

（三）贷款人对借款人未按期支付的利息按罚息利率计收复利。

（四）违反本合同规定的义务，贷款人有权停止发放本合同项下未发放的贷款，提前收回尚未到期的贷款本息。

（五）本合同项下借款的担保人违反担保合同约定义务，经贷款人指出仍不改正的，贷款人有权对借款人停止发放贷款、提前收回已发放贷款或采取其他资产保全措施。

（六）借款人有违反本合同有关条款、逃避贷款人监督、恶意拖欠贷款本金及利息等行为时，贷款人有权将该行为向有关单位通报，并在新闻媒体上公告。

5

K00114

（七）因借款人违约致使贷款人采取诉讼或仲裁方式实现债权的，借款人应当承担贷款人为此支付的费用（包括但不限于诉讼费、律师费、差旅费等）及实现债权的其他一切费用。

二、贷款人违约：

（一）在借款人履行本合同规定义务的前提下，贷款人不能按期、按额向借款人提供资金时，按违约数额和延期天数处以日利率万分之_____的违约金。

（二）贷款人违约，借款人有权依法维护自己的合法权益。

第六条　本合同项下借款的担保方式为____保证____，担保合同另行签订。

一、由　江阴市第四纺织机械制造有限公司，____徐雪伟____，
　　查亚洪　　（保证人）提供连带责任保证担保，保证合同编号　锡银担保借字2012年119号

二、由_____，_____（抵押人）
提供抵押物清单所列财产的抵押担保，抵押合同编号_____；抵押物清单编号_____。

三、由_____，_____（出质人）提供质押物清单所列财产的质押担保、质押合同编号_____，质押物清单编号_____。

第七条　争议的解决

本合同履行中发生争议，可由各方协商解决，也可按以下第__一__种方式解决：

一、诉讼。由贷款人住所地人民法院管辖。

二、仲裁。提交_____（仲裁机构全称）按其仲裁规则进行仲裁。

在诉讼或仲裁期间，本合同不涉及争议的条款仍须履行。

第八条　其他事项

6

合同编号：锡润科贷保字[2012]第 //9 号

# 保 证 合 同

债务人： 江阴市升昌科技有限公司

保证人　1、江阴市第四纺织机械制造有限公司
　　　　2、徐雪伟
　　　　3、曹亚洪

债权人： 无锡市润元科技小额贷款有限公司

无锡市润元科技小额贷款有限公司

2012年 8 月 14 日

K00116

# 保 证 合 同

锡润科贷保字[2012]第 11 号

债务人（全称）：江阴市升昌科技有限公司

债权人（全称）：无锡市润元科技小额贷款有限公司

保证人（全称）：(1) 江阴市第四纺织机械制造有限公司

（2）徐雪伟

（3）曹亚洪

为了确保（全称）江阴市升昌科技有限公司（下称债务人）与债权人签订的编号为的《 锡润科贷借字[2012]第 11 号 》（下称主合同）的切实履行，保证人已收到并阅知所担保的主合同，愿意为债务人依主合同与债权人所形成的债务提供保证担保。根据我国《合同法》、《担保法》以及其他有关法律、法规之规定，经各方当事人协商一致，特订立本合同，共同遵守。

**第一条 被担保的主债权种类、本金数额**

被担保的主债权种类为 流动资金及其他 ，本金数额（大写）伍佰万元整 。

**第二条 保证范围**

本保证合同担保的范围包括主合同项下的债务本金、利息、逾期利息、罚息、复利、手续费、违约金、损害赔偿金、实现债权的费用（包括但不限于诉讼费、执行费、保全费、鉴定费、律师代理费、差旅费等）和实现债权的其他一切费用。

**第三条 保证方式**

本合同保证方式为连带责任保证。本合同项下有多个保证人，各保证人共同对债权人承担连带责任。

**第四条 保证期间**

一、保证人的保证期间为主合同约定的债务人履行债务期限届满之日起二年。

二、债权人和债务人就主合同债务履行期限达成展期协议的，保证人继续承担保证责任，保证期间自展期协议约定的债务履行期限届满之日起二年。

三、若发生法律、法规规定或主合同约定的条项，导致主合同债务提前到期

2

的，债权人有权要求保证人提前履行保证责任的，保证人保证期间自主合同债务提前到期之日起二年。

第五条  保证人承诺

一、提供真实、完整、有效的财务报表及其它相关资料、信息，并同意债权人对其生产经营、财务活动等进行检查监督。

二、如实向债权人反映保证人已承担的其他债务及或有债务情况。

三、在做出本合同项下保证时，保证人没有作为被告或仲裁被申请人。

四、保证人负有监督主合同债务人按主合同约定用途使用借款及主合同约定的期限还本付息的义务。本合同不因主合同债务人违反主合同约定使用借款而无效。

五、保证人不按本合同约定履行保证责任的，债权人有权直接从保证人的任何帐户中划收相关款项。

六、发生以下事项时，保证于事项始发 15 日内书面通知债权人：

（一）保证人发生隶属关系变更、高层人事变动、公司章程修改以及组织结构调整。

（二）保证人停产、歇业、注销登记、被吊销营业执照。

（三）保证人财务状况恶化、生产经营发生严重困难或发生重大诉讼、仲裁等件。

（四）保证人变更名称、住所地、法定代表人、联系方式等事项。

（五）保证人发生其他不利于债权人债权实现的事项。

七、实施以下行为时，保证提前 15 日书面通知债权人并征得债权人书面同意：

（一）保证人改变资本结构或经营体制，包括但不限于承包、租赁、股份制改造、联营、合并、兼并、分立、合资、合作、对外投资、资产转让、申请停业整顿、申请解散、申请破产。

（二）保证人为本合同所担保债权以外的其他债权提供保证担保或以其主要资产为自身或前述其他债权设定抵押、质押担保。

八、债务人提供了物的担保的，债务人不履行到期债务或者发生抵、质押担

3

K 00117