O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WUXI CITY RUNYUAN KEJI ZIAOE ) Case No. EDCV 13-00944 DDP (SPx)
DAIKUAN CO. LTD. , )
                                       )  **ORDER GRANTING MOTION TO DISMISS**
                Plaintiff, )
                                       )  [Dkt. No. 12]
        v. )
                                       )
XUEWEI XU, an individual; )
SHENG XU, an individual; )
HAIRONG CAO, et al. )
                                       )
                Defendants. )
_____ )

        Presently before the court is Defendant's Motion to Dismiss

Plaintiffs' Complaint ("Motion").  Having reviewed the parties'

submissions, the Court grants the Motion and adopts the following

Order.

**I. Facts**

        Plaintiff Wuxi City Runyan Keji XiaoE Daikuan Co., Ltd.

("Wuxi" or "Plaintiff") is a Chinese business entity with its

principal place of business in the Jiangsu Province of the People's

Republic of China.  (Complaint at ¶ 7.)  Plaintiff "is licensed by

the Government of the People's Republic of China to lend small

amounts of money to qualified borrowers for approved and legitimate use." (Id.)  Plaintiff alleges that Defendants Xuexi Xu, Sheng Xu, Shubin Zhao, and Hairong Cao conspired to defraud Plaintiff of funds and to divert the funds to Defendants Repet, Repet Group, and America TBS. (Id. at ¶ 22.)  Defendants Xuewei Xu, Sheng Xu, Cao, and Zhao maintain an ownership interest in, are employees of, and operate Repet, Repet Group, and America TBS. (Id. at ¶¶ 17-20.) Repet, Repet Group, and America TBS are all California companies engaged in the business of processing post-consumer plastic used in making water bottles and polyethylene terephthalate flakes. (Id. at ¶¶ 17-19, 21.)  The companies are alleged to be alter egos. (Id. at ¶ 21.)  Repet was incorporated in 2009, America TBS was incorporated in 2010, and Repet Group was incorporated on December 4, 2012.  (Id. at ¶¶ 17-10.)

Plaintiff alleges that Defendants Xu and Cao arranged for a series of ten commercial loans in the amount of RMB ¥ Five Million, or approximately $806,452.00, on the following dates: August 1- 6, 2012 (loan 1), August 17, 2012 (loan 2), August 28, 2012 (loans 3-5), September 10, 2012 (loans 6-8), October 19, 2012 (loans 9-10). (Id. at ¶¶ 24-33.)  In each case, Plaintiff distributed the loan proceeds to an account over which Cao and Xu had access and control. (Id.)  The loans were intended to provide working capital for Jiangyin City XinRong HuaXian Co., Ltd. (owned by Cao) and Jiangyin City ShengChang KeJi Co., Ltd. (owned by Xu), but they were not used for that purpose. (Id. at ¶ 36.)

Instead, the Defendants "diverted the proceeds of the above-referenced loans out of the People's Republic of China, and upon information and belief, to bank accounts controlled by Repet, Repet

Group, and America TBS, as well as other accounts for Defendants'
personal use." (Id. at ¶ 37)(capitalizations omitted).  The
Plaintiff alleges that the Defendants were able to divert the
proceeds by using a complex scheme of transfers. (Id. at ¶ 102.)
The Plaintiff alleges that from August 9, 2010, to April 28, 2012,
a group of Chinese nationals, including Jingxia Gu, Huixiang Xu,
Xuewei Xu, Pang Zhang, Xinjun Hu, Junhong Gu, and Feifan Chen
transferred ¥ 28,442,000 from Defendants' bank accounts to bank
accounts controlled by Xiaoting Li and Yishong Chen. (Id.)  Chen
and Li are alleged to regularly engage in illegal cross-border
transfers of money from the People's Republic of China to Hong
Kong. (Id.)  Once the money was transferred to Chen and Li in Hong
Kong, they transferred it to the Defendants' U.S. bank accounts.
(Id.)

The funds were diverted for operating capital to Repet, Repet
Group, and America TBS, and for the individual Defendants' personal
use. (Id. at ¶ 37.)  Xu left China for the United States on
November 21, 2012, and he now resides in California. (Id. at ¶
34.)  Cao left China on an unknown date and now resides in
California. (Id. at ¶ 35.)  Plaintiff asserts claims for breach of
contract, fraud in the inducement, fraud, conversion, unjust
enrichment, vicarious liability, and civil RICO.

Plaintiff has previously filed a complaint with the same
allegations against the Defendants. (Case No. 5:12-cv-00274-DDP-
SP.)  The Court granted the Defendants' motion to dismiss while
giving the Plaintiff leave to amend. (Id. at Dkt. No. 38.)  The
Plaintiff failed to file an amended complaint within the time

3

1  limits, and the Court dismissed the case without prejudice. (Id.

2  at Dkt. No. 40.)

3  Defendants move to dismiss because: (1) the doctrine of

4  collateral estoppel bars Plaintiff from reltiigating its RICO

5  claim, which is the basis of this Court's subject matter

6  jurisdiction, (2)Plaintiff failed to state a claim for civil RICO

7  and, without that cause of action, the Court will lack jurisdiction

8  over the action, (3) Plaintiff lacks standing to bring a RICO

9  claim, and (4) a forum selection clause agreed to by the parties

10  requires any litigation to occur in China.

11  **II. Legal Standard**

12  A complaint will survive a motion to dismiss when it contains

13  "sufficient factual matter, accepted as true, to 'state a claim to

14  relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

15  U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

16  544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court

17  must "accept as true all allegations of material fact and must

18  construe those facts in the light most favorable to the plaintiff."

19  Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a

20  complaint need not include "detailed factual allegations," it must

21  offer "more than an unadorned, the-defendant-unlawfully-harmed-me

22  accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or

23  allegations that are no more than a statement of a legal conclusion

24  "are not entitled to the assumption of truth." Id. at 679. In

25  other words, a pleading that merely offers "labels and

26  conclusions," a "formulaic recitation of the elements," or "naked

27  assertions" will not be sufficient to state a claim upon which

28

4

1  relief can be granted.  Id. at 678 (citations and internal
2  quotation marks omitted).
3       "When there are well-pleaded factual allegations, a court
4  should assume their veracity and then determine whether they
5  plausibly give rise to an entitlement to relief."  Id. at 679.
6  Plaintiffs must allege "plausible grounds to infer" that their
7  claims rise "above the speculative level."  Twombly, 550 U.S. at
8  555, 556.  "Determining whether a complaint states a plausible
9  claim for relief" is a "context-specific task that requires the
10  reviewing court to draw on its judicial experience and common
11  sense."  Iqbal, 556 U.S. at 679.

**III. Discussion**

13       Defendants move to dismiss due to issue preclusion, lack of
14  subject matter jurisdiction, lack of standing, and improper forum.

    **A. Collateral Estoppel**

16       Defendants argue that the Plaintiff's claim ought to be barred
17  by the doctrine of collateral estoppel because the Plaintiff has
18  already litigated its claims.  (Mot. to Dismiss at p. 4.)
19       Collateral Estoppel, or issue preclusion, is available as a
20  defense when "(1) the issue necessarily decided at the previous
21  proceeding is identical to the one which is sought to be
22  relitigated; (2) the first proceeding ended with a final judgment
23  on the merits; and (3) the party against whom [issue preclusion] is
24  asserted was a party or in privity with a party at the first
25  proceeding."  Paulo v. Holder, 669 F.3d 911, 917 (9th Cir. 2011)
26  (citing Hydranautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir.
27  2000)). Generally, dismissal without prejudice does not bar the
28  plaintiff from returning later, to the same court, with the same

1  underlying claim.  <u>Semtek Int'l Inc. v. Lockheed Martin Corp.</u>, 531

2  U.S. 497, 505 (2001).  Although this Court dismissed without

3  prejudice Plaintiff's last complaint against the Defendants for

4  failure to state a claim upon which relief could be granted, the

5  Defendants contend that collateral estoppel ought to apply because

6  the Court was fully briefed on the RICO claim in the previous

7  Motion to Dismiss.  (Case No. 12-02274.)

8       Defendants rely on <u>In re Duncan</u> to support their argument.  In

9  <u>Duncan</u>, petitioner appealed the denial of his petition for

10 naturalization on the grounds that the questions he failed to

11 answer were unconstitutional.  <u>In re Duncan</u>, 713 F.2d 538, 540 (9th

12 Cir. 1983).  The court, after being fully briefed on the

13 constitutional challenges, determined that his challenges were

14 without merit and dismissed the case without prejudice.  <u>Id.</u>  On

15 appeal, plaintiff was barred from relitigating his constitutional

16 claims even though the case was dismissed without prejudice because

17 his constitutional claims had been substantively denied; the lower

18 court included the language "without prejudice" to describe the

19 status of his right to re-petition for naturalization.  <u>Id.</u> at 544.

20      <u>Duncan</u> is inapposite because the issue being precluded, his

21 constitutional challenges, had previously been "substantive[ly]

22 den[ied] on the merits"; dismissing the case without prejudice

23 meant only that he could re-file a petition for naturalization.

24 <u>Id.</u>  In contrast, in Wuxi's prior case, Case No. 12-02274, the

25 RICO claims were discussed and deemed faulty but not substantively

26 denied.  Thus, the Plaintiff here is not barred by issue

27 preclusion; the prior case was dismissed without prejudice to allow

28 an amended complaint to correct, if possible, the RICO pleading.

**B. RICO**

The Racketeer Influenced and Corrupt Organizations ("RICO") Act, passed in 1970 as Title IX of the Organized Crime Control Act, provides for both criminal and civil liability.  Pub.L. No. 91-452, § 901, 84 Stat. 922 (1970) (codified at 18 U.S.C. §§ 1961-1968). To state a claim under § 1962(c), a civil plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).  To bring a RICO claim, a plaintiff must prove two or more acts of racketeering activity.  18 U.S.C. § 1961. Racketeering activity is defined as any act chargeable under several generically described state criminal laws, any act indictable under numerous specific federal criminal provisions, including mail and wire fraud, and any offense involving bankruptcy or securities fraud or drug-related activities punishable under federal law.  Sedima, 473 U.S. at 481-82; 18 U.S.C. § 1961.  Here, the Plaintiff alleges that the Defendants engaged in the following predicate acts: (1) wire fraud, a racketeering activity defined under 18 U.S.C. § 1343, and (2) money laundering, a racketeering activity defined under 18 U.S.C. § 1957.

**i. Wire Fraud as a Predicate Act**

The elements of wire fraud are: (1) a scheme to defraud, (2) the use of the wires in furtherance of the scheme, and (3) a specific intent to deceive or defraud. United States v. Shipsey, 363 F.3d 962, 971 (9th Cir. 2004); 18 U.S.C. § 1343.  The fraud must take place in interstate or foreign commerce. 18 U.S.C. § 1343.  All allegations of fraud under the RICO statute must be

1    pleaded with particularity. <u>Moore v. Kayport Package Express, Inc.</u>,

2    885 F.2d 531, 541 (9th Cir. 1989).

3                    **a. Interstate/Foreign Commerce**

4         In order for the use of wires to satisfy the wire fraud

5    statute, the wires must be used "in interstate or foreign

6    commerce."  18 U.S.C. § 1343.  "Foreign commerce" is a term of art

7    which means "commerce with a foreign country." 18 U.S.C § 10. The

8    use of a wire to transfer money occurring between foreign countries

9    "without any territorial nexus to the United States" is not

10   criminalized by the wire fraud statute. <u>United States v.</u>

11   <u>Weingarten</u>, 632 F.3d 60, 71 (2d Cir. 2011).

12        Plaintiff does not specifically allege any wire transfers, but

13   there are two possible transfers that may have been made by wire:

14   (1) the transfers that occurred in China from various banks

15   including Jiangyin Rural Commercial Bank and China Industrial and

16   Commercial Bank to the Defendants' Chinese bank accounts and (2)

17   the transfer of the money from China to the United States.  (Compl.

18   at ¶¶ 97; 102.)  The intra-China transfers are not subject to the

19   wire fraud statute, 18 U.S.C. § 1343, and thus cannot be the

20   predicate act required under the RICO statute, 18 U.S.C. §§

21   1961-1968.  Therefore, the relevant inquiry is whether the

22   Defendants (1) had a scheme to defraud, (2) that used the wire

23   transfers from China to the United States in furtherance of the

24   scheme, and (3)had a specific intent to deceive or defraud.  18

25   U.S.C. § 1343.

26   //

27   //

28   //

1

### b. In Furtherance

2      In their Motion to Dismiss, the Defendants challenge whether

3 the wires were used "in furtherance" of the alleged fraud.  (Mot.

4 at ¶ 8.)  The Supreme Court determined that for mail fraud, the

5 mailing need not be an essential element of the scheme; rather, it

6 is sufficient if the mailing is "incident to an essential part of

7 the scheme." Pereira v. United States, 347 U.S. 1, 8 (1954).  This

8 has been applied to the analogous case of wire fraud.  The Ninth

9 Circuit has ruled that, "to be in furtherance of a scheme [the use

10 of wires] need not be an essential element of the scheme, 'just a

11 step in the plot.'" Shipsey, 363 F.3d at 971 (quoting Schmuck v.

12 United States, 489 U.S. 705, 711 (1989)).  The use of wires may not

13 simply be part of an after-the-fact transaction that, although

14 foreseeable, was not in furtherance of the defendant's fraudulent

15 scheme.  Shipsey, 363 F.3d at 971; United States v. Lo, 231 F.3d

16 471, 478 (9th Cir. 2000).

17      The Ninth Circuit has held that the use of wires to transfer

18 funds that have already been embezzled is not a use of wires in

19 furtherance of a scheme to defraud.  United States v. Wood, 259

20 Fed. App'x 48, 49-50 (9th Cir. 2007).  In Wood, the defendant

21 embezzled money from his employer by check and then used a wire to

22 send the embezzled funds to a third party for an unrelated business

23 venture, a golf course investment managed by a businessman not

24 otherwise involved.  Id.  While there was no doubt the defendant

25 stole from his employer by check, the Ninth Circuit held that wire

26 transfer was not in furtherance of his scheme to defraud.  Id.

27 Instead, the wire transfer at issue was in furtherance of the

28 investment opportunity with the businessman and was "unrelated [to

the employer-victim because the victim] could neither gain nor lose from the [the investment in the golf course.]"  Id.  The scheme to defraud was complete after the defendant embezzled the funds, and the wire transfer, which occurred one day after the funds were embezzled, could not be in furtherance of an already completed scheme.  Id.  While the second transfer may have furthered the eventual spending of the theft proceeds by moving it to a different country, it did not further the scheme to obtain Plaintiff's money in the first place.

However, using wires after a fraud is completed is not an absolute bar to liability under § 1343.  Lo, 231 F.3d at 478 ("[S]ubsequent mailings can in some circumstances provide the basis for an indictment under the mail fraud statutes[.]" (quoting United States v. Sampson, 371 U.S. 75, 80, 83 (1962))). If the perpetrator conceives his or her scheme with the use of wires in mind, then using the wires after completion of the fraud makes the fraud subject to § 1343.  Id.  For example, in Lo, the Defendant, a real estate broker, obtained loans for home purchases using fraudulent information.  Id. at 474-75.  The use of the mails occurred after the loans were completed when the County Record Office mailed deeds to the lenders and to the owners, real and sham, of the properties at issue.  Id. at 478.  The court in Lo held that although the wires were used after the fraud was technically complete, the mailings were still considered to be part of the fraud as they were used to "lull" the victims to believing everything was normal.  Id. at 479.  By lulling the victim, the apprehension of the defendants was made less likely because it assured the victims that the conveyance of the property had gone forward in accordance with the

10

1    usual procedures of the Recorder's office and provided the victims

2    with documentary proof of the conveyance.   Id.

3        Here, the Defendants are accused of "conspir[ing] to defraud

4    and in fact defraud[ing] several financial institutions located in

5    the People's Republic of China of monies through fraudulent loan

6    applications, and divert[ing] said proceeds to finance the

7    operations of Defendants Repet, Repet Group, and America TBS, and

8    for their personal use." (Compl. at ¶ 22.)  As discussed above,

9    the relevant action by the Defendants is the transfer of monies

10   from China to the United States.  Like in Wood, the alleged wire

11   transfers occurred after the loan proceeds had been issued.   The

12   relevant wire transfers from China to the United States did not

13   play any role in inducing the lenders to make the loans to the

14   Defendants.   The Complaint details how the Defendants provided

15   false financial statements misrepresenting their liquid assets and

16   forged audit reports to obtain loans to complete their scheme.

17   (Id. at ¶¶ 94, 96.)  The Plaintiff admits that once the loans were

18   complete,  wires were used to "divert the proceeds of the loans"

19   from the Defendants' Chinese bank accounts to "U.S. bank accounts

20   controlled by [the] Defendants." (Id. at ¶ 102.)  Thus, the

21   Defendants' actions are similar to Wood, in which the use of wires

22   occurred in a separate action after the completed fraud.

23        While the Defendants allegedly used wires to transfer money

24   out of China, the issue is whether the fraud would have been

25   completed without their use.  Shipsey, 363 F.3d at 971.  Unlike

26   Shipsey, in which the entire fraud scheme would have been

27   unsuccessful without the use of wires because the bank the

28   defendant was attempting to defraud would not have paid him without

1  the wired reimbursements from the third party, here the fraud took

2  place because of forged documents, not because of wire use.  Thus,

3  the use of wires was not essential to the fraud and that the fraud

4  would have been completed as soon as the Defendants received the

5  money while in China.  Therefore, like <u>Lo</u>, this is an

6  after-the-fact transaction that, although foreseeable, was not in

7  furtherance of the defendant's fraudulent scheme.

8      The Court finds that, although the Defendants may have used

9  wires in foreign commerce, the use of wires was not in furtherance

10  of any scheme to defraud the Plaintiff.

11           **ii. Money Laundering as a Predicate Act**

12      An individual is guilty of money laundering when he or she,

13  "in any of the circumstances set forth in subsection (d), knowingly

14  engages or attempts to engage in a monetary transaction in

15  criminally derived property of a value greater than $10,000 and is

16  derived from specified unlawful activity."  18 U.S.C. § 1957(a).

17  The circumstances required by § 1957(d) are either "(1) that the

18  offense under this section takes place in the United States or in

19  the special maritime and territorial jurisdiction of the United

20  States; or (2) that the offense under this section takes place

21  outside the United States and such special jurisdiction, but the

22  defendant is a United States person[]."  18 U.S.C. § 1957(d).  In

23  the present case, the money laundering did not occur within the

24  territorial jurisdiction of the United States therefore, the

25  Defendants must be shown to fall under the second set of required

26  circumstances.

27      The Defendants do not contest that the present action involves

28  a monetary transaction involving property worth more than $10,000.

12

1  The Defendants contest that the monetary transaction (1) occurred

2  in interstate or foreign commerce, and (2) was undertaken by a U.S.

3  person as required by § 1957.[1]

**a. Interstate/Foreign Commerce**

5      For the purposes of § 1957, the term "monetary transaction"

6  means "the deposit, withdrawal, transfer, or exchange, in or

7  affecting interstate or foreign commerce, of funds or a monetary

8  instrument[] by, through, or to a financial institution[]including

9  any transaction that would be a financial transaction under section

10  1956(c)(4)(B) of this title, but such term does not include any

11  transaction necessary to preserve a person's right to

12  representation as guaranteed by the sixth amendment to the

13  Constitution."  18 U.S.C. § 1957(f)(1).  Here, the Defendants

14  contest that the money laundering involved foreign commerce.  (Mot.

15  to Dismiss at ¶ 11.)

16      As discussed above, "foreign commerce" is a term of art which

17  means "commerce with a foreign country."  18 U.S.C § 10.

18  Defendants reiterate their argument that the Plaintiff failed to

19  allege the relevant RICO predicate with adequate particularity and

20  that the relevant transactions did not involve foreign commerce.

21  While RICO claims must be plead with adequate particularity, the

22  Plaintiff has satisfied that requirement.  Moore, 885 F.2d at 541

---

[1]It is not clear why Defendants limit § 1957's requirement that the monies involved be derived from a "specified unlawful activity" to RICO predicates outlined in  § 1956(c)(7)(A). "[S]pecified unlawful activity" can also be any activity in § 1956(c)(7)(B) which includes: "fraud, or any scheme or attempt to defraud, by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978))."  Thus, the money laundering predicate act is not reducible to wire fraud.

1   (explaining that RICO claims must be plead with the who, what,

2   when, where, and how).  In the Plaintiff's complaint, there are

3   specific details of how the money was methodically transferred from

4   banks on the Chinese mainland to banks in Hong Kong and then

5   finally to banks in the United States.  (Compl. at ¶ 102.)

6       Therefore, the Defendants did engage in a transfer of money in

7   foreign commerce.

8                    **b. Undertaken by a U.S. Person**

9       Money laundering also requires the relevant action to be taken

10  by "a United States person."  18 U.S.C. § 1957(d).  For the

11  purposes of § 1957(d), person is defined pursuant 18 U.S.C. § 3077

12  as "(A) a national of the United States as defined in section

13  101(a)(22) of the Immigration and Nationality Act (8 U.S.C.

14  1101(a)(22)); (B) an alien lawfully admitted for permanent

15  residence in the United States as defined in section 101(a)(20) of

16  the Immigration and Nationality Act (8 U.S.C. 1101(a)(20)); (C) any

17  person within the United States; (D) any employee or contractor of

18  the United States Government, regardless of nationality, who is the

19  victim or intended victim of an act of terrorism by virtue of that

20  employment; (E) a sole proprietorship, partnership, company, or

21  association composed principally of nationals or permanent resident

22  aliens of the United States; and (F) a corporation organized under

23  the laws of the United States, any State, the District of Columbia,

24  or any territory or possession of the United States, and a foreign

25  subsidiary of such corporation."  18 U.S.C. § 3077(2).

26      Here, Defendants X.Xu, S.Xu, Cao, and Zhao were not United

27  States persons at the time of the alleged money laundering.

28  Although the money was funneled to corporations incorporated in the

                                    14

1  United States, these corporations were not themselves engaged in

2  money laundering, nor does the Plaintiff argue so in its opposition

3  brief.  Plaintiff's Complaint does not allege that either X.Xu or

4  Cao are United States persons; the Complaint merely alleges that

5  their status is unknown.  (Compl. at ¶ 4.)  Defendants admit that

6  X.Xu and Cao are currently lawful permanent residents but were not

7  between August 9, 2010, and April 28,2012, when the alleged money

8  laundering occurred.  (Id. at ¶ 102.)  Plaintiff also admits that

9  Defendant Zhao is neither a legal resident or citizen of the United

10  States.  (Id. at ¶ 5.)  The Plaintiff does not contest that the

11  Defendants do not meet the required conditions of the money

12  laundering statute.

13      The Court finds that money laundering is insufficiently plead

14  to be a predicate act for the RICO claim because any alleged money

15  laundering occurred at the hands of non-US citizens.

16              **iii. Conclusion on RICO**

17      Because Plaintiff's complaint fails to state a claim upon

18  which relief can be granted due to the shortcomings in its RICO

19  claim, the Court does not have subject matter jurisdiction over

20  Plaintiff's case through a federal question.  The Court therefore

21  declines to decide (1) whether Repet, Repet Group, and America TBS

22  can be RICO Defendants, and (2) whether the Plaintiff has standing

23  to bring a RICO claim.

24  **C. Diversity Jurisdiction**

25      As this Court previously held, once the RICO cause of action

26  is dismissed this Court will lack subject matter jurisdiction over

27  the action because "[d]iversity jurisdiction does not encompass

28  foreign plaintiffs suing foreign defendants."  <u>Mutuelles Unies v.</u>

1   <u>Kroll & Linstrom</u>, 957 F.2d 707, 711 (9th Cir. 1992).  Here,

2   Plaintiff is a Chinese business entity.  (Compl. at ¶ 7.)

3   Defendants X.Xu, Sheng Xu, and Cao are domiciled in California, but

4   hail from China.  (<u>Id.</u> at ¶ 4.)  Defendant Zhao is a Chinese

5   citizen.  (<u>Id.</u> at ¶ 5.)  Defendants Repet, Repet Group, and America

6   TBS are all California companies.  (<u>Id.</u> at ¶ 21.)  As discussed in

7   the Order Granting Motion to Dismiss in case EDCV 12-02274,

8   Plaintiff Wuxi failed to show Defendants X.Xu, S.Xu, Zhao, and Cao

9   were citizens of the United States.  (Order Granting Motion to

10  Dismiss, No. 12-02774, Dkt. No. 38 ¶ 7 (C.D. Cal. May 1, 2013).)

11  Moreover, Defendants Xu and Cao provided evidence that they are

12  citizens of China.  (<u>Id.</u>)  Because there were foreign citizens on

13  both sides of the case, the Court did not have jurisdiction; this

14  remains the case in this action, and the Court, likewise, lacks

15  diversity jurisdiction.

16          **D. Forum**

17          Because this Court lacks subject matter jurisdiction, either

18  through federal question or diversity, it need not evaluate the

19  Defendants' claim that the forum selection clause dictates China as

20  the exclusive forum for this lawsuit.

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

16

**IV. Conclusion**

For the reasons stated above, the RICO claims are DISMISSED with prejudice.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.


IT IS SO ORDERED.



Dated: July 30, 2013

                                          DEAN D. PREGERSON
                                          United States District Judge